By the Court.
The state charges the defendants with a combination and conspiracy in restraint of trade in respect to intrastate traffic.
The alleged combination attacked by the state in the present action originated in the Morgan plan of reorganization of The Hocking Valley Railway Company, which plan contemplated, and subsequently embraced, control of the Toledo & Ohio Central, the Kanawha & Michigan, and the Zanesville & Western railway companies. These companies were largely engaged in the transportation of bituminous coal from the Ohio and West Virginia coal fields to the cities and markets of Ohio and to the Great Lakes.
In the process of financial development of this combination there was acquired a controlling stock interest in certain coal mining companies operating the Ohio and West Virginia districts, and the stock of the Hocking Valley Company (which was then the holding company) fell into the hands of what is called the Trunk Line Syndicate, composed of the five trunk lines controlling the transportation *452 of coal from the entire Appalachian mining district into the markets of the middle west.
At this juncture, the state filed a petition in quo warranto in the circuit court of Franklin county, which resulted in a judgment, entered January 18, 1910 (12 C. C, N. S., 49 and 145), ordering a dissolution of the Morgan combination between the Hocking Valley, on the one hand, and the Toledo & Ohio Central, the Kanawha & Michigan, and the Zanesville & Western, on the other; and also ordering a dissolution of the stock-holding connection between The Hocking Valley Railway Company and the various coal mining companies controlling mines along the line of said railway in the Hocking Valley district in the state of Ohio.
Following the final judgment of the circuit court of Franklin county, there was executed what is known as the March 1910 agreement between the Lake Shore and Michigan Southern and the Chesapeake & Ohio railway companies, and acquiesced in by the other railroads forming the Trunk Line Syndicate.
Without going into unnecessary detail, this contract provided for the acquisition by the Lake Shore and Chesapeake & Ohio companies of the stock held by' the five companies composing the Trunk Line Syndicate. It also provided for the transfer of the Hocking Valley stock exclusively to the Chesapeake & Ohio company, and of the Toledo and Ohio Central stock exclusively to the Lake Shore company. The contract further provided for the transfer of a portion of the stock of the Kanawha & Michigan to the Chesapeake & Ohio, and for the trusteeing of the majority of the con *453 trolling interest in the Kanawha & Michigan for the joint benefit of the Lake Shore and Chesapeake & Ohio companies.
By this plan the Hocking Valley company was, through stock ownership, practically acquired by the Chesapeake & Ohio company, and by similar means the Lake Shore company practically acquired the Toledo & Ohio Central and the Zanesville & Western companies; while the Kanawha & Michigan, which paralleled the Chesapeake & Ohio in West Virginia and the Hocking Valley in Ohio, and connected with both the Toledo & Ohio Central and the Hocking Valley, was made subject to joint control by the Chesapeake & Ohio and the Lake Shore companies. This contract provided for the disposition and trusteeing of the stocks in the coal companies, which The Hocking Valley Railway Company had been ordered to dispose of by the decree of the Franklin county circuit court.
The contract contained a provision for the joint use of the western division of the Toledo & Ohio Central, and of the Hocking Valley main line, for the transportation of coal cars at the option of either company.
There was a further provision for an arrangement for the distribution of the business of the coal companies, whose bonds had been guaranteed by the Toledo & Ohio Central and the Hocking Valley railway companies, to protect the railway companies upon such guaranty. There was evidently an arrangement for an equal division between the Hocking Valley and the T. & O. C. of the tonnage originating on the K. & M.
*454 Following the March 1910 agreement and the reorganization and operation of the railway and coal companies thereunder, this action was brought.
Subsequently to the bringing of this action, the United States government brought an action in the United States court at Cincinnati to enjoin the various railway companies from carrying out the March 1910 agreement, upon the ground that it and the operation of the railroad companies thereunder was in violation of the federal antitrust act. That action was finally decided in favor of the government, and the defendants were ordered to dispose of their interests in the said coal companies, and the Chesapeake & Ohio was ordered to dispose of its interest in The Kanawha & Michigan Railway Company. This order has been carried out to the approval of the United States court.
At the instance of the attorney general of Ohio, who appeared as amicus curiae, the United States court reserved the question of the corporate power of certain of the railroad companies to hold stock in the other railroad corporations.
The railroad now owned and operated as the Zanesville & Western was probably intended by the original promoters to be an independent competing company for the transportation of bituminous coal. But as now existing, its railroad extends only from Thurston, a small village on the Toledo & Ohio Central, into the coal mining district, and does not reach the coal markets either directly or by any connections independent of the Toledo & Ohio Central.
We have reached the conclusion that the Zanesville & Western is a feeder rather than a competí *455 tor of the Toledo & Ohio Central, and, therefore, that there is no legal impediment to the right of the Toledo & Ohio Central or the Lake Shore & Michigan Southern to hold the capital stock of the Zanesville & Western.
The New York Central Railroad Company, the successor, by consolidation, of the Lake Shore Company, was brought in by a supplemental petition, charging among other things that the New York Central company was a competitor of The Toledo & Ohio Central Railway Company.
The question of the right of one railroad company to acquire and hold the stock of another railroad company, under Sections 8683 and 8684, General Code, is now settled by the recent decision of our supreme court in the case of Pollitz et al. v. The Public Utilities Commission of Ohio, 96 Ohio St., 49.
The only condition, therefore, affecting the right of the holding company to acquire the stock of other railroad companies, is that the two companies be kindred and not competing.
We think the evidence shows that the Lake Shore company and the Toledo & Ohio Central company were connected so as to permit the passage of trains from one railroad to the other. The Chesapeake & Ohio was not physically connected with the Hocking Valley at the time this action was brought, or the case tried, but we think that makes no difference in view of the decision in the Pollitz case. We find, as a fact, that The Hocking Valley Railway Company and The Chesapeake & Ohio Railway Company were not competitors for intrastate business. The United States court held, by *456 necessary inference if not directly, that those companies were not competitors for interstate business, and the action of the United States court is the last word upon the subject of interstate business. We therefore follow the action of the United States court in respect to interstate commerce, and find no legal impediment to the Chesapeake & Ohio company holding the stock of the Hocking Valley company, nor do we find that the acquisition and holding of the stock of The Toledo & Ohio Central Railway Company by the Lake Shore & Michigan Southern Railway Company was illegal.
The state contends, and we think correctly, that the March 1910 agreement, and the operation of the railroad companies thereunder, down to the time when the relief granted by the United States district court was put into effect, was not a compliance with the order of the circuit court of Franklin county, but amounted to a continuance of the unlawful combination previously existing.
The March 1910 agreement and the operation of the railroad companies thereunder did not terminate railroad ownership of the stock in the coal mining companies; nor the guaranty of the bonds of such companies and the consequent control over the business of such companies. The provision of the March 1910 agreement for the joint control of The Kanawha & Michigan Railway Company, which was a competing company with both the Chesapeake & Ohio and the Hocking Valley, and the tonnage arrangement with reference to shipments arising thereon, together with the optional exchange of transportation facilities between the Hocking Valley company and the *457 Toledo & Ohio Central company, as to its western division, were inconsistent with the complete divorcement of the Chesapeake & Ohio and the Hocking Valley, and of the Toledo & Ohio Central and the Kanawha & Michigan, as competing systems of transportation.
It would therefore follow that the combination following the March 1910 agreement, and in existence at the time the present action in quo warranto was brought, was illegal and inconsistent with the decree of the Franklin County circuit court.
It is contended, however, that since rendition of judgment by the United States district court, and disposition of the coal company and railway stocks under the approval of said court, this case becomes a moot case and no order can be made or relief granted. In this connection the case of United States v. Hamburg-American Co., 239 U. S., 466, is cited.
We think, upon a consideration of the authorities, that the rule that a court should not decide a moot question does not apply to the present case:
First. Because the question is not entirely moot. This court finding it proper to grant additional relief.
Second. Because the subject of the present action involves intrastate traffic which was not involved in the federal action.
Third. Because the state should be entitled to the benefit of the judgment as to intrastate traffic over which it has exclusive control.
The judgment of the United States district court does not assume to control intrastate traffic, and *458 whether or not the defendants would observe the regulations of the United States district court as to intrastate traffic depends upon their volition and not upon the force and effect of the order of the United States court. See opinion of Donahue, J., in State v. Cox, 87 Ohio St., 313, 335.
It is true that the stocks in the coal companies and The Kanawha & Michigan Railway Company have been actually disposed of under the supervision of the United States district court, but the state is entitled to have the dissolution made permanent as to intrastate traffic and to have a supervision over the future conduct of the defendants in respect thereto.
While some reference was made in the majority opinion of the judges of the United States district court to the optional exchange of facilities between the Hocking Valley and the Toledo & Ohio Central as to its western division, no relief was granted in that court.
We think it is important that the two competing systems, the Chesapeake & Ohio and the Hocking Valley, on the one hand, and the Toledo & Ohio Central and the Kanawha & Michigan, on the other, be completely divorced, and that such optional exchange of facilities is inconsistent, especially in view of their prior relationship and the tendency of these competing companies towards trade restriction.
It therefore follows that there should be a decree ousting the original defendants from the right to own or control the stocks of coal mining companies or to continue the guaranty of bonds of such companies; that the defendants should also be ousted *459 from the right to continue the exchange of facilities between the Hocking Valley and the Toledo & Ohio Central as stipulated in the March 1910 agreement; and that the Chesapeake & Ohio should be ousted from the right to own, control or have an interest in the capital stock of The Kanawha & Michigan Railway Company.
The New York Central Railroad Company was properly made a party and the decree should operate against it as the successor of The Lake Shore & Michigan Southern Railway Company.
The averment of the supplemental petition against The New York Central Railroad Company, to the effect that that company is a competitor with the Toledo & Ohio Central, is in the nature of an original cause of action against the New York Central company.
The chief contention upon this issue is that the Lake Erie, Alliance & Wheeling, operating in mining district No. 8, and now controlled by the New York Central company, is a competitor of the Toledo & Ohio Central company. It is true that the Lake Erie, Alliance & Wheeling company was one of the transportation lines involved in the Morgan plan, and if the original Morgan plan was still in operation, or should be revived, the situation as to the Lake Erie, Alliance & Wheeling might be important; but in view of the relatively small amount of competition possible between the Lake Erie, Alliance & Wheeling and the Toledo & Ohio Central companies, and also in view of the fact that the New York Central did not stipulate as to the evidence brought into the record from the United States court, we think so much of the supplemental *460 petition as is involved under the averments as to competition between the New York Central company and the Toledo & Ohio Central company should be dismissed without prejudice.

Decree of ouster accordingly.

Kunkle, Allread and Ferneding, JJ., concur.